Allen, J.
delivered the opinion of the Court.
It appears that the appellees on the 30th July 1841, sued out of the Circuit court a subpoena in chancery against the appellant Henry Carrington, as administrator, and the other appellants as children and heirs of John A. Morton deceased, which was returned executed August 7th, 1841, on Henry Carrington, and the rest no inhabitants. On the 21st August 1841, they filed their bill, in which they charge that they are creditors of the intestate; that the administrator alleged there were not assets in his hands sufficient to pay them : that the personal estate had been exhausted in the payment of bond debts binding the heirs ; that the real estate of which the intestate had died seized in the county of Halifax, had been sold under a decree of the County court of said county for the purpose of dividing the proceeds amongst the heirs: that said Carrington had been appointed by the said Court collector of the proceeds of sale, and had collected and then held part thereof, and the residue would be due at a future day. They seek to marshal the assets and to be substituted to the rights of the bond creditors, and satisfied out of the real assets; and pray that Carrington as administrator and as such collector, he made defendant; that as administrator he render an account, and as collector be restrained from paying away or disposing of the funds in his hands or which may come into his hands; and ask that the proceeds arising from the sale be applied to the payment of their debt, and for general relief. Two of the children and heirs were proceeded against as non-residents, by publication; a guardian ad litem was appointed to defend the other two children and heirs as infants, who in December 1842 put in an answer for them.
*262 At November rules 1841, the bill was taken for confessed as to Carrington, and as to him the cause set for hearing. At April rules 1843 it was set for hearing as to the non-resident defendants, and came on for hearing at April term 1843, upon the order of publication. the answer of the infants by the guardian ad litem, and the bill taken for confessed as to Henry Carrington and an interlocutory order for an account was rendered. At the April term 1844 the cause was heard upon exceptions to the report and recommitted. Henry Carrington answered in April 1845; and on the 13th April 1846, the decree appealed from was rendered. In his answer Carrington avers that all the assets which came to his hands as administrator, have been paid out to the creditors; an averment which is sustained by the report of the master commissioner, which shews he is in advance to the estate. He further avers that the money arising from the sale of the land descended to the heirs, and which came to his hands as collector, had been paid out by him to the parties respectively entitled to receive it, in virtue of two orders of the County court made in the suit in which he was appointed collector ; that he acted in obedience to the orders of the Court whose commissioner he was. And he alleges that he had no recollection that the subpoena in this cause had been ever served on him; and that he had no knowledge of the existence of the suit at the time he paid out the money. The record of the County court which he files as an exhibit with his answer, shews that a friendly suit for the sale of the land and distribution of the proceeds was brought in November 1839, and a decree appointing commissioners to sell was rendered during the same term. In January 1841, H. Carrington was appointed collector. At August term 1841, the report of sale was confirmed, and the collector ordered to pay over the amount of the first instalment, after deducting certain allowances to the widow *263 and children in the proportions fixed by the decree ; and at March term 1842 he was ordered to pay over the second instalment; and the report of the commissioner shews that the money was all paid out by him between the 1st February and the 1st November 1842.
In September 1841, after the institution of this suit, the appellees obtained a judgment against the administrator for their debt, subject to a credit of 108 dollars 91 cents, paid on the 27th September 1S41. By the commissioner’s report it appears that assets to the value of 700 dollars had been applied by the administrator in the payment of debts binding the heirs.
From the foregoing statement of the facts it is evident that the appellees had a right to be substituted to the shoes of the creditors whose debts bound the heirs, and that the assets should have been marshalled for their benefit. The land had been sold by a decree of the Court at the time they instituted their suit; and it was competent for them to follow the proceeds. Their bill sets out that their debtor was late of the city of New York, the original subpoena is returned no inhabitant as to all the defendants except the administrator; and two of the children and heirs being adults, were proceeded againt as non-residents; and from the return on the subpoena and the other circumstances, it is fair to presume the infant children and heirs were also non-residents. The heirs were debtors to the value of the assets descended, and if non-residents, it would have been competent to have proceeded against them by way of foreign attachment, and by a restraining order, or an endorsement on the subpoena, which stands in place of such order, to have attached the proceeds arising from the sale of land. The appellees did not adopt this course. The heirs were not treated as debtors; but the proceeding was to subject the land descended, or the proceeds arising from the sale thereof, as the estate of their deceased debtor within the jurisdiction of the *264 Court. The heirs were made defendants not as debtors, but as absent defendants having an interest in the subject which the creditor was seeking directly to charge under the equitable jurisdiction of the Court to marshal the assets of a decedent. They were warranted in this course by the case of Tennent v. Patton, 6 Leigh 196, where in a case to marshal the assets, one of the heirs being a non-resident was proceeded against as an absent defendant. But their bill cannot be treated as tantamount to a foreign attachment with a restraining order. Regularly they should have enjoined the resident defendant from paying over the funds in his hands to those entitled thereto, or have obtained some order from the Court restraining the resident defendant from paying away the funds. This was not done. The resident defendant avers he did not know of the existence of the suit at the time the money was paid away, and that he did not remember the subpoena had ever been served upon him. The subpoena was sued out against him in his character of administrator only, and not against him as collector. It gave him no notice of a proceeding against him for the money in his hands as collector. There is no evidence of actual notice to him, and as he could have had no motive in paying to one in preference to the other claimant, it seems manifest that he has acted in good faith in obedience to the orders of the Court from which he derived his authority, and to which he was responsible; and in ignorance of the claim of the appellees. There is nothing to affect his conscience. If he is to be compelled to pay the money over again, it must result from the application of some stern and inflexible rule of equity, which from reasons of public policy fixes a liability upon him, though he was free from all blame. This it is maintained on the part of the appellees is the case here. The money was paid lite pendente; and therefore there could be no change of subject by the voluntary act of the party so as to af *265 feet the right of the party suing. The doctrine of lis pendens does not depend upon the presumption of notice, but upon reasons of public policy; and where it operates, applies, although there was no possibility of notice of the suit. Newman v. Chapman, 2 Rand. 93.
Treating this as a subject which would be affected by the Us pendens, how does the appellant Carrington stand ? No fraud is imputable to him; he has collected a fund as an officer of Court. He was the mere agent of the Court, having no interest in the subject; the Court made an order for him to pay it away and he obeyed it. Can this be treated as a voluntary act of the party calculated to defeat the rights of a suitor in another case. It is said he should have communicated the pendency of the suit to the County court; but this and similar arguments are based on the assumption that he is presumed to have notice of the suit and the prayer of the bill; and presuming he had notice, he is then to be treated as if he actually had it, and his conscience is to be affected thereby. But notice in fact is denied, is not proved, and is against all the presumptions of the case; nor is notice actual or presumptive at all necessary, if this is a case for the application of the doctrine of Us pendens. But where, as in this case, an officer of a Court is made a defendent, who as agent of the Court collects money to be held subject to its control and is liable to attachment instantly for disobedience to its orders, the duty of obedience is a paramount obligation ; and he cannot be held responsible for such obedience by the application of the general doctrine of Us pendens. The creditors were the parties in default, and cannot invoke the application of the principle where it will operate so harshly. Their suit was originally irregularly instituted. They should have made themselves, by petition or bill, parties to the proceeding in the County court, in which Court the fund had been realized ; and then proper measures would have been taken *266 to secure it. They had full notice of this proceeding, f°r they refer to it in their bill. Failing in this, they should either have proceeded by foreign attachment and obtained a restraining order, or made the proper endorsemeni on the subpoena, or if they elected to proceed to charge the subject and treat the heirs as absent defendants, they should have enjoined the defendant from paying over the money, or taken some measures to secure the fund in his hands or to have it paid into Court. Instead of doing so, they seem to have contented themselves with the institution of their suit, relying upon the doctrine of the Us pendens, whilst the collector in ignorance of any claim was permitted to go on and pay away the money. The claim to charge him has little foundation in equity, and I think his duty to obey the decrees of the Court, whose agent he was, was a paramount obligation, and relieves him from all liability growing out of the doctrine of Us pendens. And therefore that so much of the decree as charges Henry Carrington for the money paid out by him as collector in obedience to the orders of the County court, is erroneous. The decree was also erroneous in not giving the infants a day to shew cause against it after arriving full age; but as the decree against Carrington and the various defendants is joint, and must be reversed, and such decree entered as the Court below should have done, the leave can still be reserved.
Reversed with costs; and this Court proceeding to render such decree, &c.; bill dismissed as to Henry Carrington without costs. It is further adjudged and ordered that the plaintiffs recover (as in former decree from several defendants, leaving out Carrington) and leave is reserved to the infants to shew cause against this decree within six months after they respectively attain full age.